IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MATTHEW J. PETRAKIS, #B19052** | ) |
| | ) |
| **Plaintiff,** | ) |
| vs. | ) Case No. 3:21-cv-00459-SMY |
| | ) |
| **SCOTT THOMPSON,** | ) |
| **KIM LARSON,** | ) |
| **PERCY MYERS,** | ) |
| **J. EK,** | ) |
| **CHRISTINE BROWN,** | ) |
| **JENNIFER CHACON,** | ) |
| **JUSTIN DUPREE,** | ) |
| **DANA RITCHIE,** | ) |
| **BRANDI CARL,** | ) |
| **SARAH GLEN,** | ) |
| **COLLEEN SCHULTZ,** | ) |
| **MISSY WELCH,** | ) |
| **SCOTT PARISH,** | ) |
| **SGT. KINCADE,** | ) |
| **ROB JEFFREYS, and** | ) |
| **WEXFORD HEALTH SOURCES, INC.** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Matthew J. Petrakis, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Danville Correctional Center ("Danville"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Danville and Pinckneyville Correctional Center ("Pinckneyville"). This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A. Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1):

### *Pinckneyville*

Plaintiff notified Warden Thompson, Dr. Myers, and Healthcare Unit Administration/ADA Coordinator Brown that he was experiencing vertigo as a side effect of his severe hearing loss. He requested ADA accommodations, a bottom bunk permit, and a lower gallery designation, but his requests were denied. Dr. Myers told him that he had to prove that he had vertigo. Plaintiff asked to be tested for vertigo and for medication to treat his vertigo, but his requests were denied.

Warden Thompson, Dr. Myers, and Brown were also notified that Plaintiff needed to see a medical doctor concerning his issues with dizziness from David Price, a Beltone employee. The defendants sent Plaintiff to Price for an examination for his hearing loss. The defendants ignored Price's recommendations and were deliberately indifferent to Plaintiff's ADA needs.

Additionally, Sherri Cook, a qualified hearing specialist employed by the Chicago Hearing Society, notified Warden Thompson, Dr. Myers, and Brown of Plaintiff's balance and dizziness issues. Cook was brought in by IDOC to provide a detailed auxiliary aids and service assessment/communication plan to determine the special needs of the inmates. In Plaintiff's assessment, Cook stated he needed to be placed on a lower bunk in a cell on the first floor because of balance issues. The recommendation was ignored. Brown told Plaintiff that "Ms. Cook makes recommendations, she doesn't give orders."

As a result of the deliberate indifference of Warden Thompson, Dr. Myers, and Brown to Plaintiff's ADA needs and Dr. Myers's failure to treat Plaintiff's medical conditions, Plaintiff fell from a top bunk on September 26, 2019 and October 14, 2019 and suffered injuries, including a knee injury that caused severe pain.

*Danville*

Plaintiff signed up for nurse sick call for chronic severe knee pain on June 14, 19, and 24, 2020.  He was seen by Nurses Ritchie, Shultz, and Parish.  He complained of pain at 8.5 to 9.5 on a scale of 1-10.  Each time, he was given fourteen 200 mg Ibuprofen.  He told Nurses Ritchie, Shultz, and Parish that the Ibuprofen did not relieve his pain and requested that the prescription for Tramadol written by Dr. Young be renewed (it expired June 8, 2020).  Plaintiff was advised by each nurse that Danville did not have a doctor at the time and only Nurse Practitioner Dupree could renew a prescription for Tramadol.

Plaintiff continued to suffer severe pain and signed up for nurse sick call on June 25, 2020.  He was seen the following day by NP Dupree.  Upon entering the exam room, NP Dupree stated in a loud, rude, and aggressive manner, "I'm not renewing you Tramadol and I'm not going to argue about it!"  Plaintiff told NP Dupree he did not want to be argumentative but wanted to know why considering his injury was well documented and the Ibuprofen was not easing his pain.  NP Dupree stated, "you'll just have to file another lawsuit" and told him to "get out of my office."  Plaintiff felt threatened and stepped into the hallway in view of security staff.  He then asked NP Dupree, "so you're not going to do anything for me – just leave me in pain?" NP Dupree responded, "no, gotta cover my ass I'm ordering you some more Ibuprofen.  Plaintiff again advised NP Dupree that Ibuprofen did not ease his pain and stated he would seek intervention from the court.  NP Dupree laughed and told him to go ahead, that he had worked there for years and had never seen the courts do anything to help an inmate.  NP Dupree then made a false entry in Plaintiff's medical record stating that Plaintiff was not using crutches or his knee brace and refused to be examined.

Plaintiff continued to suffer severe pain and filed two emergency grievances to Warden Larson, but did not receive a response.  He signed up for nurse sick call and was seen by Nurses

Carl and Glenn on June 30, 2020. Nurses Call and Glenn told him there was nothing they could do because NP Dupree was their superior. They gave him eighteen 325 mg Tylenol and sent him back to the cellhouse. He signed up for nurse sick call on July 5, 10, and 12, 2020 but Nurses Ritchie and Welch refused to see him and falsely wrote in his medical file that he refused to be seen. He signed up for nurse sick call on July 16, 2020 and was seen on July 18, 2020 by Nurses Ritchie and Welch who stated his pain was his own fault because he refused to allow NP Dupree to examine him on June 26, 2020. He maintained that was not true, but they refused to do anything to help him.

Plaintiff attended nurse sick call on August 10, 2020 with Nurse Shultz. He asked why he had not seen a doctor and why his condition was not being treated as an emergency. Nurse Shultz advised him he should not have made NP Dupree angry. Nurse Schultz then made a comment about all the grievances he had been filing. He informed her that not letting him see a doctor because he filed a grievance is retaliation. She told him to file another grievance. She also told him that the doctor is from Galesburg Correctional Center and is only at Danville once a week.

Plaintiff was called to the healthcare unit ("HCU") on August 13, 2020 to see Dr. Ek. Plaintiff described the medical issues with his knee. Dr. Ek responded, "then why were you just outside running?" Before going to the HCU, Plaintiff had been walking on the track in the yard while wearing two knee braces, two ace bandages for added support, and a crutch. Plaintiff assured Dr. Ek that he had not been running. Dr. Ek advised him that Sgt. Kincade and Nurse Carl had reported that he had been running and he did not believe they would lie. Plaintiff maintained they were lying in retaliation for his filing of grievances. Dr. Ek expressed his disbelief of Plaintiff and did not conduct an examination. He seized Plaintiff's crutch and declared he would not order anything other than Tylenol for pain and would not approve the collegial review of the request for

an MRI. Plaintiff again advised Dr. Ek that he had been lied to by staff and asked him to look at the x-rays and radiologist reports. Dr. Ek replied, "we are done here" and walked out of the room. Plaintiff's pain was exacerbated by Dr. Ek seizing his crutch.

### *Allegations against IDOC Director and Wexford*

IDOC Director Rob Jeffreys failed to investigate the allegations made by Plaintiff when he appealed sixteen grievances to the Administrative Review Board ("ARB") regarding the denial of ADA accommodations, a bottom bunk permit, a lower gallery designation, and medical treatment for his vertigo at Pinckneyville and the denial of medical treatment for his knee injury and pain at Danville.[1] As IDOC Director, Jeffreys is liable for the constitution violations committed by his subordinates.

Wexford Health Sources Inc has been deliberately indifferent to the inadequate healthcare its employees provide, failed to provide adequate staff for the IDOC facilities, failed to supervise or train its employees, failed to discipline its employees, and failed to respond to evidence of misconduct by its employees for so long they have created a policy or custom under which unconstitutional acts continue to occur causing injury to plaintiff and others.

Based on Plaintiff's allegations, the Court designates the following claims in the *pro se* Complaint:

> Count 1: Americans with Disabilities Act and/or Rehabilitation Act claim against Jeffreys, Dr. Myers, Brown, and Thompson for failing to accommodate Plaintiff's hearing loss and vertigo.
>
> Count 2: Eighth Amendment claim against Jeffreys, Dr. Myers, Brown, and Thompson for deliberate indifference to Plaintiff's serious medical needs regarding his hearing loss and vertigo and against Wexford for deliberate indifference to the inadequate healthcare its employees provide, failing to provide adequate staff, failing to

---

[1] As evidenced by attachments to the Complaint, two of the ARB responses to Plaintiff's appeals from the Pinckneyville grievances are signed by IDOC Director John Baldwin, not IDOC Director Rob Jeffreys. (Doc. 1-4, p. 5; Doc. 1-6, p. 3).

5

|  |  |
|---|---|
|  | supervise and train its employees, failing to discipline its employees, and failing to respond to evidence of misconduct by its employees for so long they have created a policy or custom which resulted in deliberate indifference to Plaintiff's hearing loss and vertigo. |
| Count 3: | Eighth Amendment claim against Jeffreys, Larson, Dr. Ek, Dupree, Chacon, Ritchie, Carl, Glen, Shultz, Welch, Parish, and Kincade for exhibiting deliberate indifference to Plaintiff's knee injury and severe pain and against Wexford for deliberate indifference to the inadequate healthcare its employees provide, failing to provide adequate staff, failing to supervise and train its employees, failing to discipline its employees, and failing to respond to evidence of misconduct by its employees for so long they have created a policy or custom which resulted in deliberate indifference to Plaintiff's knee injury and severe pain. |
| Count 4: | First Amendment retaliation claim against Larson, Dr. Ek, Dupree, Chacon, Ritchie, Carl, Glen, Shultz, Welch, Parish, and Kincade for refusing to treat Plaintiff's knee injury and severe pain in retaliation for Plaintiff exercising his First Amendment right to seek redress from the courts and for filing grievances. |
| Count 5: | First and/or Fourteenth Amendment claim against Jeffreys for failing to investigate the allegations made by Plaintiff regarding the denial of ADA accommodations, a bottom bunk permit, a lower gallery designation, and medical treatment for his vertigo at Pinckneyville and the denial of medical treatment for his knee injury and pain at Danville when he appealed sixteen grievances to the ARB and each one was denied. |

Any claim that is mentioned in the Complaint but not addressed in this Order is dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

### **Preliminary dismissals**

Plaintiff maintains that IDOC Director Jeffreys is liable for the constitutional violations of his subordinates. However, there is no respondent superior or "supervisor liability" under 42 U.S.C. § 1983, *see Chavez v. Illinois State Police*, 251 F.3d 612, 651 (2001). Therefore, that claim

6

is dismissed.

Jennifer Chacon, the Healthcare Unit Administrator at Danville, is named as a defendant, but there are no factual allegations against her in the statement of claim.[2] Under Federal Rule of Civil Procedure 8, the Complaint must include a short, plain statement of the case against each individual. Merely naming a party in the caption of a Complaint is not enough to state a claim against that individual. *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Further, to state a § 1983 claim, a plaintiff must allege that each defendant was personally involved in the deprivation of a constitutional right. *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) ("[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation"); *see also Pepper v. Village of Oak Park*, 430 F.3d 806, 810 (7th Cir. 2005) ("[T]o be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation."). Absent any allegations describing what Chacon allegedly did or failed to do in violation of Plaintiff's constitutional rights, the claim against her cannot proceed. She will be dismissed without prejudice for failure to state a claim.

## Discussion

### Count 1

Under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-213, "no qualified individual with a disability shall, because of that disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006). The Rehabilitation Act ("RA"), 29 U.S.C. §§ 794-94e,

---

[2] Plaintiff includes Chacon in his designation of "Claim #2," which is stated against a group of ten Danville defendants, but she is not included in the factual allegations under that "claim." (Doc. 1, pp. 10-12; Doc. 1-1, pp. 1-3). The Court notes that, according to documents attached to the Complaint, Chacon responded to grievances filed by Plaintiff. (Doc. 1-10, pp. 6-7; Doc. 1-12, p. 6; Doc. 1-16, p. 4). However, Chacon's involvement in the grievance process does not implicate her in the constitutional violation alleged in the grievances. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *see also Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance.").

also prohibits discrimination against qualified individuals based on a physical or mental disability. The analysis under the ADA and RA is the same, except that the RA includes as an additional requirement the receipt of federal funds, which all states accept for their prisons. *Jaros v. Illinois Dep't of Corr.*, 685 F.3d 667, 671 (7th Cir. 2012) (citing 29 U.S.C. § 705(2)(B)). Under both statutes, discrimination includes the failure to accommodate a disability. *Jaros*, 684 F.3d at 672. In a prison setting, access to certain housing facilities are among the programs and activities protected by the ADA and the RA. *Id.* Both the ADA and the RA provide for injunctive relief against an agency found to be in violation of the statute.

Plaintiff alleges that he suffers from a disability – severe hearing loss and vertigo – and that IDOC Director Jeffreys, Dr. Myers, Healthcare Unit Administration/ADA Coordinator Brown, and Warden Thompson failed to accommodate his disability because they did not provide ADA accommodations, a bottom bunk permit, and a lower gallery designation. These allegations are sufficient to proceed on the ADA and RA claim. However, a claim under the ADA or RA must be made against the state agency, in this case IDOC. *Jaros*, 684 F.3d at 670. As such, IDOC Director Jeffreys is the proper defendant for Plaintiff's ADA and RA claim, and Dr. Myers, Brown, and Thompson will be dismissed from Count 1 with prejudice. *Id.*; 29 U.S.C. 749(b); 42 U.S.C. 12131; *Jaros*, 684 F.3d at 670, n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). Count 1 will proceed only against IDOC Director Jeffreys, in his official capacity.

### Counts 2 and 3

Prison officials and medical staff violate the Eighth Amendment's prohibition on cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state a claim, a prisoner must allege

facts suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* "[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015).

The allegations in the Complaint are sufficient to proceed on the deliberate indifference claim in Count 2 against IDOC Director Jeffreys, Dr. Myers, Brown, and Thompson and in Count 3 against Jeffreys, Larson, Dr. Ek, Dupree, Ritchie, Carl, Glen, Shultz, Welch, Parish, and Kincade. Plaintiff has also stated a viable claim in Counts 2 and 3 against Wexford; that medical care was denied and/or delayed as a result of Wexford policies and practices. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference if it had a policy or practice that caused the violation).

**Count 4**

Prison officials are prohibited from retaliating against inmates for filing grievances, exercising First Amendment rights, or otherwise complaining about their conditions of confinement. *See, e.g., Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012). To state a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). "A complaint states a claim for retaliation when it sets forth a chronology of events from which retaliation may plausibly be inferred." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). The allegations in the Complaint are sufficient to proceed on the retaliation claim in Count 4 against Larson, Dr. Ek, Dupree, Ritchie, Carl, Glen, Shultz, Welch, Parish, and Kincade.

**Count 5**

"Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [a prisoner's] grievances by person who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *see also Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). Further, the Constitution does not require officials to investigate or otherwise correct wrongdoing after it has happened. *Whitlock v. Brueggemann*, 682 F.3d 567, 588-89 (7th Cir. 2012). Therefore, prison officials incur no liability under § 1983 if they fail or refuse to investigate a prisoner's complaints or grievances. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005); *Watson v. Dodd*, No. 16-CV-1217-NJR, 2017 WL 120951, at *6 (S.D. Ill. Jan. 12, 2017); *Wilkins v. Illinois Dep't of Corr.* No. 8-cv-732-JPG, 2009 WL 1904414, at *9 (S.D. Ill. July 1, 2009). Thus, Plaintiff fails to state a viable claim against IDOC Director Jeffreys in Count 5, and that claim will be dismissed.

**Request for Injunctive Relief**

Kim Larson, in an official capacity as the Warden of Danville Correctional Center, is the proper defendant for Plaintiff's request for injunctive relief. *See Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (holding warden is proper defendant for injunctive relief claim as he would be responsible for ensuring that any injunctive relief would be carried out).

**Stay**

In a document attached to the Complaint, Plaintiff referenced another case he has pending in this district, SDIL case no. 3:19-cv-00579-NJR, and indicated he had attempted to bring some of the claims in this case therein. A review of the Merit Review Order of the Second Amended Complaint in 19-559 show the following facts and claims have been raised in that case:

… Petrakis alleges that after failing a hearing test on January 18, 2019, his repeated requests for accommodations for his hearing disability have been denied by the health care unit administrator, Christine Brown, and the warden at Pinckneyville, Scott Thompson. (Doc. 25). As a result, he is unable to hear calls for meals and is not eating. He also has not received adequate medical treatment from Dr. Myers, who would not issue Petrakis a low bunk permit and lower gallery designation, even though the hearing loss has caused Petrakis to experience severe vertigo.

In the proposed amended complaint, Petrakis reasserts many of these same factual allegations. He also adds details regarding his visit to Beltone for an audiogram on March 13, 2019. Petrakis states that Mr. Price, the hearing instrument specialist, told him that he should see a doctor as soon as possible for his dizziness, as this could be a sign of serious medical issues. As of December 10, 2019, Petrakis had still not been examined by a doctor for his hearing loss and balance issues. Defendants Myers and Brown have failed to have Petrakis treated, examined, or referred to a qualified specialist for his hearing. They have also denied his requests for a low bunk permit and lower gallery designation. Petrakis has now fallen twice climbing down from the top bunk—on September 26, 2019, and October 14, 2019—and injured his knee.
….

On July 26, 2019, Sheri Cook, a qualified specialist from the Chicago Hearing Society, conducted an assessment on Petrakis and his ADA needs. She determined that Petrakis needed to be placed on a lower bunk and to be notified when line movements and announcements were made over the intercom system. Despite these recommendations, he was still not provided a low bunk permit.

[Pending claims:]

Count 1: Americans with Disabilities Act and Rehabilitation Act claim against Jeffreys, Dr. Myers, Brown, and Thompson for failing to accommodate Petrakis's hearing loss.

Count 2: Eighth Amendment claim against Brown, Thompson, and Dr. Myers for deliberate indifference to Petrakis's serious medical needs regarding his hearing loss and vertigo.

Because the claims in Counts 1 and 2 in this lawsuit are identical to Plaintiff's claims in 19-579, the Court must determine the appropriate course of action regarding the duplicate claims. Under Seventh Circuit precedent, a stay rather than a dismissal of a later-filed duplicate action is the appropriate action. *Njie v. Yurkovich*, 720 F. App'x 786, 789–90 (7th Cir. 2018) ("when confronted with parallel lawsuits, we have advised courts to stay successive actions, rather than dismiss them, unless it is clear that dismissal cannot adversely affect any litigant's interest") (citing

*Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002). Accordingly, Plaintiff will be ordered to show cause why this case should not be stayed pending the resolution of the claims in 19-579.

### Disposition

The following claims will proceed: Count 1 against Rob Jeffreys (official capacity only); Count 2 against Rob Jeffreys, Percy Myers, Christine Brown, Scott Thompson, and Wexford Health Sources Inc.; Count 3 against Rob Jeffreys, Kim Larson, J. Ek, Justin Dupree, Dana Ritchie, Brandi Carl, Sarah Glen, Colleen Shultz, Missy Welch, Scott Parish, Sgt. Kincade, and Wexford Health Sources Inc.; and Count 4 against Rob Jeffreys, Kim Larson, J. Ek, Justin Dupree, Dana Ritchie, Brandi Carl, Sarah Glen, Colleen Shultz, Missy Welch, Scott Parish, and Sgt. Kincade.

Defendants Percy Myers, Christine Brown, and Scott Thompson are **DISMISSED with prejudice** from Count 1. Defendant Jennifer Chacon and Count 5 are **DISMISSED without prejudice**.

The Clerk shall prepare for Rob Jeffreys (official and individual capacities), Percy Myers, Christine Brown, Scott Thompson, Wexford Health Sources Inc., Kim Larson, J. Ek, Justin Dupree, Dana Ritchie, Brandi Carl, Sarah Glen, Colleen Shultz, Missy Welch, Scott Parish, and Sgt. Kincade: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Finally, Plaintiff is **ORDERED** to **SHOW CAUSE** by JULY 16, 2021 why this case should not be **STAYED** in its entirety due to the claims in Counts 1 and 2 being identical to Plaintiff's claims in SDIL case no. 3:19-cv-00579-NJR.

**IT IS SO ORDERED.**

**DATED:  June 16, 2021**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

**Notice to Plaintiff**

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.